## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| DAVID HUFFMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  11-cv-1253 |
| ) | |
| LOIS LINDORFF, et al., ) | |
| ) | |
| Defendants. ) | |

## O R D E R  &  O P I N I O N

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 79), filed by the remaining Defendants in this case. Plaintiff failed to file a response. For the reasons stated below, this Motion is granted.

### PROCEDURAL HISTORY

Plaintiff, a prisoner proceeding pro se, alleges Defendants were deliberately indifferent to a serious medical condition, in violation of the Eighth Amendment. Defendant Lois Lindorff was terminated from the case on September 11, 2013, when the Court granted her motion for summary judgment because there was no evidence that she was personally involved in the alleged constitutional violation. (Doc. 77). In a separate Order, the Court also determined that Plaintiff's proposed expert witness, William Croft, based his opinion on methodology that is not scientifically reliable; thus, Dr. Croft's expert report was barred. (Doc. 76). The remaining Defendants are three medical professionals who performed services at Plaintiff's correctional facility, and their employer, Wexford Health Care Sources ("Wexford").

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant. *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011).

To survive summary judgment, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Technical Grp.*, 258 F.3d 557, 563 (7th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## FACTUAL BACKGROUND[1]

Plaintiff was incarcerated at Hill Correctional Center, in Galesburg, Illinois, during the relevant time period, from April 2006 until he was transferred to

---

[1] The facts are drawn from Defendants' statement of Undisputed Material Facts. As discussed above, Plaintiff failed to respond to the Motion for Summary Judgment, so the Court takes the facts as true to the extent they are properly supported by citations to evidence in the record.

another facility in September 2013. Defendant Saleh Obaisi was a physician employed by Defendant Wexford, performing services at Hill Correctional Center between October 2007 and December 2009. Defendant Ronald Schaefer was also a physician employed by Wexford from February 2008 to October 2009, traveling to multiple institutions, including Hill Correctional Center. Defendant Amy John was a physician's assistant employed by Wexford at Hill Correctional Center from March 2009 to August 2011.

Plaintiff testified in his deposition that he believes he suffers from a condition called mycotoxicosis. He described his medical conditions as problems with sinuses, headaches, stomach problems, and shaky nerves. He testified that his aunt, with no medical training, diagnosed his mycotoxicosis through research on the Internet. He acknowledges a past history of ulcerative colitis, asthma and acid reflux disease, but admits he did not follow the prescribed course of treatment for these conditions.

Plaintiff saw Dr. Obaisi on January 24, 2009, complaining of multiple chronic symptoms including headaches, difficulty swallowing, gnawing feelings in his stomach, and dizziness. He determined Plaintiff suffered from allergies and ordered Plaintiff to receive medication to treat it and to follow up in a month. Plaintiff returned to Dr. Obaisi on February 21, 2009, this time complaining about a hard area and discoloration on his tongue. Dr. Obaisi determined Plaintiff suffered from leukoplakia, a chronic thickening or discoloration on the tongue, gums, or cheeks, and planned to discuss appropriate steps with other physicians.

Plaintiff went to a dentist three times in the spring of 2009 regarding his leukoplakia. On the second visit, the dentist took a culture, which came back free of

3

abnormalities. Plaintiff also saw Ms. John on April 29, 2009.[2] Plaintiff complained of nasal problems, constant headaches, a bad taste in his mouth, stomach pain, heartburn, and constipation. He reported that he was concerned about mold exposure, possibly resulting from vitamins he took in 1998 while at Menard Correctional Center, and showed Ms. John information about fungus and mold that he had obtained from his family. Her evaluation of Plaintiff was normal except for discoloration and a film-like appearance on his tongue. She agreed to review the information he gave her on mold exposure, and ordered a fiber supplement for his constipation and follow-up as needed. On May 15, 2009, she noted she had read the literature, and scheduled Plaintiff for a number of tests.

In June 2009, Dr. Schaefer was notified of Plaintiff giving information that he had received online to the health care unit. He ordered a chest x-ray and a follow-up with a physician's assistant after blood testing. On June 24, 2009, Dr. Schaefer informed Plaintiff that his x-rays and tests came back without abnormalities, and instructed Plaintiff to follow up with a physician's assistant.

Plaintiff saw Ms. John on September 9, 2009, complaining of similar symptoms to his previous visits, including a gnawing stomach, headaches, and sinus problems. Her evaluation of Plaintiff revealed nothing abnormal. Ms. John believed he was obsessing over the mold exposure information. He reported to her that he sent a pair of socks to William Croft, a pathologist, for testing and wished to also send him a urine sample. Ms. John noted Plaintiff was refusing his medication.

---

[2] Defendants' statement of facts says it was 2011, but the IDOC records listed in chronological order show it was 2009, which is more consistent with the other facts.

She advised Plaintiff to follow up with a psychologist to address possible depression and with medical staff as needed.

The next time Ms. John saw Plaintiff was on February 23, 2010. Plaintiff was complaining of a history of headaches that Tylenol and ibuprofen did not help. Her examination revealed no abnormalities. After advising Plaintiff of the possible risks of taking aspirin long-term, he indicated he still wanted the medication, so Ms. John ordered that he receive aspirin as needed and follow up in four weeks. Plaintiff returned to Ms. John on March 23, 2010, reporting improvement in his headaches. He saw Ms. John a few more times in 2010, relating to his headaches and constipation, and one incident when bleach was splashed in his eye.

After Plaintiff filed a grievance with the prison staff about his concerns with mycotoxicosis, the medical staff was asked to render opinions. Dr. Obaisi thought the information on mycotoxicosis cited in the grievance lacked credibility and assured that Plaintiff was receiving quality medical care for his symptoms. Dr. Obaisi's professional opinion was that Plaintiff had not been exposed to toxic amounts of mold. Dr. Schaefer gave an opinion that Plaintiff was not suffering from symptoms of mold exposure and stated no test results indicated he was exposed to mold. All three Defendants gave opinions that Plaintiff was not suffering from mycotoxicosis.

## DISCUSSION

Defendants are entitled to summary judgment on Plaintiff's claims. First, Plaintiff has failed to put forth any evidence in support of his claim in response to Defendants' Motion for Summary Judgment. Second, even taking all of the evidence

5

in the record in the light most favorable to Plaintiff, a reasonable jury could not find that he satisfied the elements of a deliberate indifference claim.

## I. *Plaintiff's Summary Judgment Burden*

As recently explained by the Seventh Circuit, the party without the burden of proof at trial may move for summary judgment on the ground that there is an "'absence of evidence to support the nonmoving party's case.'" *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 325). "If, after an adequate opportunity for discovery, 'the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court *must* enter summary judgment against her.'" *Id.* (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)).

Defendants raised this ground in their present Motion, arguing Plaintiff has not met his burden to come forward with evidence in support of his claim. (Doc. 79 at 17, 19, 20). Plaintiff has had an adequate opportunity for discovery, as indicated by the Scheduling Order establishing a discovery period that was over six months long, with detailed deadlines and requirements. (Text Order, Feb. 10, 2012). Plaintiff has not given the Court any indication that discovery was inadequate, and has not come forward with evidence in support of his claim. Thus, under *Modrowski*, Defendants are entitled to judgment in their favor.

## II. *Failure to Satisfy Elements of Claim*

Even considering the facts on the record in the light most favorable to Plaintiff, he could not sustain his claim. Plaintiff's claim is that Defendants were deliberately indifferent to his medical needs by failing to address his exposure to

mold and his alleged mycotoxicosis condition, in violation of the Eighth Amendment. "[D]eliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A plaintiff raising such a claim must prove (1) that there was an objectively serious medical condition, and (2) that the prison officials were deliberately indifferent to the condition. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). A serious condition is one that was diagnosed by a physician as requiring treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal quotation marks omitted). For example, a condition that significantly affects daily activities, or the existence of chronic and substantial pain, may be serious medical conditions. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). To satisfy the second element, the defendant must have been actually aware of the serious medical need, and intentionally disregarded it. *See Matos ex rel. Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003). Deliberate indifference requires a showing of more than gross negligence. *E.g.*, *id.* Even failure to diagnose or improper treatment that would amount to medical malpractice does not necessarily violate the Eighth Amendment. *Gutierrez*, 111 F.3d at 1374. Rather, treatment decisions must be such a "substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008).

7

Here, the evidence in the record shows that a reasonable jury could not find Plaintiff has satisfied either element as to the individual Defendants. As for the first element, a jury could not find Plaintiff suffered from a serious medical condition. The symptoms he complained about to medical staff were not serious medical conditions. His headaches, though apparently ongoing, were improved by aspirin prescribed by Defendant John. His stomach complaints were usually described as a gnawing feeling, and nothing indicates it caused substantial pain or interfered with his daily activities. Except for the discoloration and toughness on Plaintiff's tongue from leukoplakia that was treated, none of the objective evaluations completed by Defendants revealed any abnormalities. Further, there is no evidence that a medical professional has diagnosed Plaintiff's complaints of symptoms as being related to mold, or that he has been diagnosed with mycotoxicosis.[3]

Even if Plaintiff presented sufficient evidence of a serious medical condition, there is no evidence to support a conclusion that Defendants were aware of this condition and deliberately indifferent to it. Each of the Defendant medical professionals took steps to treat the more serious, specific symptoms Plaintiff presented to them. When Plaintiff complained of sinus problems, Dr. Obaisi assessed Plaintiff as having allergies and prescribed Plaintiff medication to address it. When Plaintiff complained of headaches, Ms. John put him on an aspirin regimen, which helped relieve the pain. When Plaintiff complained of constipation,

---

[3] Plaintiff did have a report from William Croft, who had tested his sock, indicating Plaintiff was exposed to lethal amounts of mold that has caused mycotoxicosis. However, this material has been barred by the Court as unreliable. (Doc. 76). It thus cannot be used to support Plaintiff's claim.

he was prescribed a fiber supplement by Ms. John. In fact, Plaintiff admitted during his deposition that every condition he presented to the medical staff at Hill Correctional Center was treated.

Further, relating specifically to mycotoxicosis, he never raised the matter with Dr. Obaisi, so there is no evidence he was even aware of the concern before Plaintiff's grievance was filed. When Plaintiff gave Ms. John information about potential problems from mold exposure, she reviewed the information and ordered tests, which came back normal. Dr. Schaefer ordered a chest x-ray and blood tests in response to Plaintiff's complaints, which also came back normal. None of this behavior shows a deliberate disregard to any of Plaintiff's medical conditions, and there is no evidence of a substantial departure from generally accepted professional judgment. There is no evidence showing anything other than appropriate care for Plaintiff's symptoms and complaints by the individual Defendants. Thus, the individual Defendants are entitled to summary judgment, and the claim against them must be dismissed.

Defendant Wexford is also entitled to summary judgment. Plaintiff bases his claim against Defendant Wexford on the allegation that Wexford has not properly trained its employees to treat and diagnose conditions arising from mold exposure. As a private corporation acting under color of state law, Wexford cannot be liable under § 1983 on the basis of respondeat superior. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). Rather, Plaintiff must prove Wexford maintained a policy that caused a constitutional violation. *See Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).

The Court has already determined that there was no constitutional violation by any of the individual Defendants. Further, the evidence on record does not support any finding that Wexford maintained an unconstitutional policy with regard to its medical staff's diagnosis and treatment of conditions caused by mold exposure. In fact, the individual Defendants provided testimony that their treatment decisions, including the lack of treatment for Plaintiff's alleged mycotoxicosis, were based on their professional medical opinions that he had not been exposed to mold and did not suffer from the condition, and not on any policy of Wexford. Thus, Defendant Wexford is also entitled to judgment as a matter of law.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Doc. 79) is GRANTED. Plaintiff's claims against the remaining Defendants are DISMISSED WITH PREJUDICE.

CASE TERMINATED.


Entered this 7th day of February, 2014.


                                                              s/ Joe B. McDade
                                                              JOE BILLY McDADE
                                        United States Senior District Judge